# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4826 | **DATE** | 9/28/2001 |
| **CASE TITLE** | James Wesley vs. James A. Chrans | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss (Doc. No. 13-1) is denied. Respondent to file an Answer within 20 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 28 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/28/2001 date mailed notice | |
| ETV | courtroom deputy's initials | SEP 28 PM 3:34 Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. JAMES WESLEY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | No. 00 C 4826 |
| JAMES A. CHRANS, | ) ) | Judge Rebecca R. Pallmeyer |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner James Wesley filed this habeas petition on August 7, 2000. Respondent James Chrans has moved to dismiss the entire petition as untimely and, in the alternative, specific claims for Petitioner's alleged failure to exhaust those claims in state court. The court, applying the doctrine of equitable tolling, denies Respondent's motion to dismiss the entire habeas petition, but grants such motion with respect to Grounds Five and Six of the petition due to Petitioner's failure to exhaust those claims in state court.

## FACTUAL BACKGROUND[1]

At 7:00 a.m. on August 8, 1994, James Gooden, Jr. died of multiple gunshot wounds after he answered the front door of his home at 2009 South 9th Avenue in

---

[1] In reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254, a federal court presumes that the facts found by state courts are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden to establish, by convincing evidence, that a state court's factual determinations are erroneous. *See United States ex rel. Green v. Greer*, 667 F.2d 585, 589 n. 6 (7th Cir. 1981). Petitioner does not challenge the Illinois Appellate Court's factual findings in his petition. The court, therefore, adopts the facts set forth in *People v. Wesley*, No. 1-97-2136, Ill. App. Ct., 1st Dist., Oct. 9, 1998, at 1-8.

wounds after he answered the front door of his home at 2009 South 9th Avenue in Maywood, Illinois, where he lived with his parents. At trial, Gooden's father, James Gooden Sr., testified that one week prior to the shooting, Petitioner and another man drove up to his home in a red car, knocked on the front door, and told him that they had a package for his son. Gooden's mother, who was not at home when her son was shot, corroborated her husband's testimony that Petitioner had come to the Gooden's home in a red car a week prior to the shooting. She claimed that, at the time, Petitioner was wearing an earring. Both of Gooden Jr.'s parents knew Petitioner; he and their son were friends and their daughter dated Anthony Edwards, another friend of Petitioner's.

On the morning of the shooting, Gooden Sr. was standing by the front window of his home when he observed Petitioner, who he identified in court, approach the front door. He saw his son open the door before trying to close it. As his son fled upstairs, Gooden Sr. heard four gunshots. He then saw Petitioner walk to his car, which was red and "looked like an old Chevrolet," and drive away. Later that morning, Gooden Sr. gave a physical description of the shooter to Detective Lawrence Connor, who had been assigned to investigate the murder. On cross-examination, Gooden Sr. admitted that he did not tell Detective Connor or Officer James Robinson, who also arrived on the scene that morning, that his son and Petitioner were friends or that his daughter dated Anthony Edwards.

Based on Gooden Sr.'s physical description, Detective Connor assembled a photographic array which contained Petitioner's photograph. Gooden Sr. told Detective Connor that the photograph of Petitioner looked like the shooter, and later selected

Petitioner from a line-up. Petitioner was arrested, and, at the time of the arrest, the police found a .32 caliber Smith & Wesson revolver under the driver's seat of his 1993 Dodge Shadow.

Petitioner testified that he knew Gooden Jr. and that Gooden Jr.'s parents had been to his house numerous times. He also denied that he was at the Gooden home on either of the two days in question. Finally, he denied telling the Assistant State's Attorney that he was Anthony Edwards' chief assistant and bodyguard. On rebuttal, the Assistant State's Attorney testified that Petitioner had told her that he (1) was a member of a gang and was Edward's chief assistant and bodyguard; and (2) helped Edwards sell drugs at a motel and helped move a safe which contained $130,000 and cocaine to Gooden Jr.'s home.

On March 7, 1997, following a bench trial in the Circuit Court of Cook County, Petitioner was convicted of first degree murder and unlawful use of a weapon. The court sentenced him to a 60-year term of imprisonment for murder and a concurrent 5-year term for the weapons charge. On direct appeal, Petitioner's appointed counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). Petitioner filed a *pro se* motion opposing the *Anders* motion. While the court does not have a copy of Petitioner's *pro se* motion, the appellate court's ruling on the *Anders* motion indicates that Petitioner's *pro se* motion raised the following issues: (1) the State failed to prove his guilt beyond a reasonable doubt; (2) the line-up was suggestive and Gooden Sr.'s identification was inadequate; (3) the trial judge erred in admitting evidence of other crimes; and (4) Gooden Sr.'s testimony was fraught with inconsistencies. On October 9, 1998, the Illinois Appellate Court, First District,

granted appointed counsel's *Anders* motion and affirmed Petitioner's convictions and sentences in an eight-page unpublished order. (Exhibit A to Respondent's Motion to Dismiss.) On November 17, 1998, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, raising the same four issues he had raised in his *pro se* motion to the appellate court. His petition for leave to appeal was denied on February 3, 1999. (Exhibit B to Respondent's Motion to Dismiss.)

On or about February 16, 1999, Petitioner executed and filed by mail a post-conviction petition. That petition was file-stamped on February 22, 1999. (Exhibit C to Respondent's Motion to Dismiss.) Petitioner claims that members of his family also filed a copy of that same post-conviction petition in person on May 14, 1999.[2] This post-conviction petition raised the following claims:

> (1) Petitioner was denied his Sixth Amendment rights to the effective assistance of counsel at the trial level when his trial counsel failed in the following ways: (a) not calling or interviewing "critical defense witnesses" whose names and addresses were provided to counsel long before trial; (b) neither visiting Petitioner nor giving him documents relating to discovery for three years; (c) not contesting the Assistant State's Attorney's memorandum when he knew it to be "twisted and false;" (d) convincing Petitioner to choose a bench trial by saying there was "no way" the judge would find Petitioner guilty, thereby denying Petitioner his right to be tried by a jury; (e) not objecting to evidence and remarks improperly put forth by the prosecution (e.g., that the only reason Petitioner had on a "paper suit" during his suggestive line-up was that he had been taken to the hospital at the time of his arrest and was returned wearing the "paper suit"); and (f) not objecting to the prosecution's opening and closing arguments which

---

[2] In a letter to the Clerk of the Cook County Circuit Court dated May 18, 2000, Petitioner actually claims that his post-conviction petition was hand filed on March 16, 1999, but in his Petition of Mandamus and another letter to the Circuit Court, he asserts that it was filed on May 14, 1999. Because Respondent does not dispute that Petitioner himself filed his post-conviction petition in February, and, therefore, this extra filing was not necessary, this date is not central to the court's disposition of Petitioner's habeas petition.

4

were false and intentionally misleading; and

(2) Petitioner was not proven guilty of first degree murder beyond a reasonable doubt and his appellate counsel was ineffective for not raising the following critical issues on appeal: (a) Petitioner was subjected to a suggestive line-up; (b) the single eye-witness identification of Petitioner was vague and doubtful; (c) the trial court erred in admitting "other crimes" evidence (the "other crime" being the attempted invasion of the Gooden's home one week prior to the shooting); and (d) the totality of the circumstances indicate inconsistencies in Gooden Sr.'s testimony.

On May 21, 1999, the same trial judge that convicted Petitioner, Judge Frank DeBoni, dismissed the post-conviction petition as frivolous and patently without merit. (Exhibit E to Respondent's Motion to Dismiss.) Petitioner claims that he appealed that decision, but he has presented no documents to support that assertion. The Illinois Appellate Court and the Illinois Supreme Court both deny that they received any such appeal and currently have no such appeal pending. Both Respondent and this court contacted the Illinois Appellate Court and the Illinois Supreme Court to verify this information.

Currently incarcerated at the Joliet Correctional Center, Petitioner executed the instant petition for writ of habeas corpus on August 1, 2000; it was file-stamped by the clerk of the federal district court on August 7, 2000. Petitioner alleges the following seven grounds for relief:

(1) he was not proven guilty beyond a reasonable doubt of every fact necessary to constitute first degree murder;

(2) the line-up introduced at trial was suggestive and prejudicial and the single eye-witness identification was "vague and doubtful;"

(3) the trial court erred when it admitted evidence of Petitioner's other crimes (the "other crime" being the attempted invasion of the Gooden's home one week prior to the shooting);

(4) the totality of the circumstances indicates that the identification was "vague and doubtful" and therefore insufficient to prove Petitioner guilty beyond a reasonable doubt;

(5) Petitioner was denied his Sixth Amendment rights to the effective assistance of counsel at the trial level when his trial counsel failed in the following ways: (a) not calling or interviewing "critical defense witnesses" whose names and addresses were provided to counsel long before trial; (b) neither visiting Petitioner nor giving him documents relating to discovery for three years; (c) not contesting the Assistant State's Attorney's memorandum when he knew it to be "twisted and false;" (d) convincing Petitioner to choose a bench trial by saying there was "no way" the judge would find Petitioner guilty, thereby denying Petitioner his right to be tried by a jury; (e) not objecting to evidence and remarks improperly put forth by the prosecution (e.g., that the only reason Petitioner had on a "paper suit" during his suggestive line-up was that he had been taken to the hospital at the time of his arrest and was returned wearing the "paper suit"); and (f) not objecting to the prosecution's opening and closing arguments which were false and intentionally misleading;

(6) Petitioner was denied his Fifth, Sixth, and Fourteenth Amendment rights to the effective assistance of appellate counsel, when his appellate counsel failed to raise "critical issues on appeal," and instead filed a *Finley* motion; and,

(7) the State of Illinois has placed obstacles before Petitioner and the court should grant relief under the "inordinate delay rule."[3]

Respondent James A. Chrans now moves to dismiss this petition. He argues that the entire petition is untimely because Petitioner failed to file it within the one-year statute of limitations set forth in § 2244(d) of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), and, in the alternative, that Petitioner has procedurally defaulted on Grounds Five and Six of his petition because he failed to exhaust them in

---

[3] The court notes that this is not actually an independent ground for relief, but, instead, an argument as to why Grounds Five and Six of his habeas petition should not be deemed procedurally defaulted. The court, therefore, will construe the habeas petition as having raised six grounds for relief, and will address Petitioner's "inordinate delay" argument with respect to Grounds Five and Six later in this opinion.

state court and the time to exhaust them has expired. The court rejects the first argument, finding Petitioner's petition saved by the doctrine of equitable tolling, but accepts the second argument and dismisses Grounds Five and Six accordingly.

## DISCUSSION

### A.  Statute of Limitations and Equitable Tolling

Under § 2244(d) of AEDPA, "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a state court." 28 U.S.C. § 2244(d)(1). The limitations period begins to run on "the date on which the judgment became final by the conclusion of direct review . . . ;" *id.* § 2244(d)(1)(A); here, that date would be February 3, 1999. As Respondent correctly concedes, however, pursuant to Supreme Court Rule 13, Petitioner is entitled to count an additional 90 days after this date, during which time he could have filed a petition for writ of certiorari in the United States Supreme Court. *See* 28 U.S.C. § 2244(d)(1)(A); *Mitchell v. Pierson*, No. 01 C 285, 2001 WL 893810, at *3 (N.D. Ill. Aug. 8, 2001); *United States ex rel. Davila v. Sternes*, No. 00 C 6577, 2001 WL 893818, at *1 (N.D. Ill. Aug. 8, 2001). Thus, his direct appeal was, for purposes of AEDPA, actually completed on May 4, 1999. Given that Petitioner filed his habeas corpus petition on August 7, 2000, he obviously filed outside the period set forth in § 2244(d)(1)(A).

Importantly, Section 2244(d) further provides that "[t]he time during which a properly filed application for State post-conviction . . . is pending shall not be counted toward any period of limitation under this subsection;" *id.* § 2244(d)(2); yet, even if the court were to apply § 2244(d)(2), the instant habeas corpus petition would still be

7

untimely. This conclusion warrants a brief explanation: the court finds that Petitioner filed his post-conviction petition on February 22, 1999, before his direct appeal was complete, and that the petition was dismissed on May 21, 1999. Petitioner did not appeal that decision; thus, after May 21, no post-conviction petition was pending. Section 2254(d)(2) offers Petitioner only 18 extra days (from May 4 until May 21). Petitioner did not file his habeas corpus petition until August 7, 2000, more than fourteen months after his post-conviction petition was decided. Even accounting for § 2244(d)(2), then, Petitioner filed the instant petition after the one year statute of limitations had already run.

Petitioner nevertheless asks the court to apply the doctrine of equitable tolling to excuse his untimely filing.[4] The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Chapple v. National Starch & Chem. Co. & Oil*, 178 F.3d 501, 505-06 (7th Cir. 1999) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)). The Seventh Circuit has held this doctrine to be applicable in the habeas corpus context, *see Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) ("the judge-made doctrine of equitable tolling is available, in principle at least [to habeas petitioners]."), albeit only in "[e]xtraordinary circumstances far beyond the litigant's control [which] have prevent[ed] timely filing."

---

[4] As Respondent notes in his Motion to Dismiss, Petitioner did not explicitly raise an "equitable tolling" argument in his Petition. In Ground Seven (his "Inordinate Delay" argument), however, he did allege facts to support such an argument. Moreover, after having been "tipped off" by Respondent, Petitioner included a separate "Equitable Tolling" section in his "Traverse/Reply to Respondent's Motion."

8

*United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000).

Since *Taliani,* most courts within the Seventh Circuit have not been willing to apply the equitable tolling doctrine to the facts before them. *See, e.g., United States ex rel. Mendez v. Pierson,* No. 00 C 7552, 2001 WL 340113 (N.D. Ill. Apr. 6, 2001) (refusing to apply the equitable tolling doctrine to excuse petitioner's untimely habeas petition where petitioner argued that the untimeliness was due to his attorney's error); *United States ex rel. Moss v. Schomig,* No. 00 C 5499, 2001 WL 477212 (N.D. Ill. Apr. 4, 2001) (same). This case, however, presents different circumstances. Petitioner contends he did not file the instant habeas petition sooner because the Circuit Court, despite Petitioner's numerous entreaties for information concerning the status of his post-conviction petition, failed to inform that the petition had been dismissed. Indeed, Petitioner asserts he was not even able to ascertain whether or not the court had received his petition until April 28, 2000. Respondent has offered nothing to rebut this assertion, and Petitioner presents ample evidence to support it: Attached to his habeas petition is a letter of inquiry file-stamped on April 26, 2000, requesting the status of his post-conviction petition. In another letter, dated May 18, 2000, Petitioner detailed his failed attempts to confirm that his petition was filed and explained that he did not receive notice of the disposition of his petition until April 28, 2000. Further, Petitioner filed a Petition of Mandamus seeking to compel the court both to "answer his inquiries as to the status of his case, and [compel the] Hon. Frank DeBoni to appoint counsel" for post-conviction proceedings.[5] Appendix D, Respondent's Motion to Dismiss. Thus,

---

[5] For reasons unexplained in the record, the Petition for Mandamus was not
(continued...)

it appears that Petitioner, despite "all due diligence," was unable to obtain "vital information" bearing on the status of his case.

The facts here are reminiscent of *Phillips v. Donnelly*, a recent case from the Fifth Circuit. 216 F.3d 508 (5th Cir. 2000). The petitioner in *Phillips* allegedly received notice of the denial of his state habeas corpus petition nearly four months after it was denied. In reversing dismissal of his habeas petition on timeliness grounds, the Fifth Circuit held that, if proven, the respondent's delay in notification would qualify as an "exceptional circumstance" warranting the application of the equitable tolling doctrine. The court finds that Respondent's undisputed 11 month delay here warrants application of this judge-made doctrine as well.

Factoring such tolling into the statute of limitations calculation, Petitioner would have had until April 28, 2001 to file his habeas corpus petition. Because he filed the instant petition on August 7, 2000, the court considers it timely.

### B. Failure to Exhaust and Procedural Default

The court's decision to apply the equitable tolling doctrine to excuse the untimely filing of the instant Petition does not save each and every one of Petitioner's claims, however. Respondent accurately notes that Petitioner has failed to exhaust Grounds Five and Six of his habeas petition.[6] A federal district court may not grant a writ of

---

[5](...continued)
filed until June 1, 2000, after Petitioner had been notified of the status of his post-conviction petition, but it is dated January 25, 2000, before he knew that his post-conviction petition had been dismissed.

[6] Respondent does not actually argue that Petitioner's failure to exhaust Grounds Five and Six constitutes a procedural default of those two claims. Instead, it asks that this court, if it chooses to apply equitable tolling to excuse the late filing,
(continued...)

habeas corpus unless the petitioner has exhausted his state court remedies. *See Chambers v. McCaughtry*, No. 00-1959, 2000 WL 33421447, at *4 (7th Cir. Sept. 5, 2001) (citing 28 U.S.C. § 2254(b)(1)(A)). Failure to exhaust available state court remedies constitutes a procedural default. *Id.* (citing *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir.1999)).

In *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999), the Supreme

---

[6](...continued)
exhaustion rule requires a district court to dismiss a 'mixed petition' containing both exhausted and unexhausted claims, 'leaving the petitioner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court.') (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)). Essentially, Respondent argues that because its delay in notifying Petitioner of the status of his post-conviction petition was so egregious, the Illinois Appellate and Supreme Courts would grant Petitioner's out-of-time appeal of the denial of his post-conviction petition. The irony of such an argument aside, the court disagrees. When Petitioner learned that his post-conviction petition had been denied, he affirmatively opted to file a petition for habeas corpus with this court instead of appealing the denial to the Illinois Appellate Court. Thus, Petitioner has not failed to exhaust his ineffective assistance of counsel claims; he has procedurally defaulted on them. *See Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). Just last month, the Third Circuit held that:
> if a claim has not been fairly presented to the state courts but further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility. Under those circumstances, the claim is procedurally defaulted, not unexhausted, and the claim may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default.

*Wenger v. Frank*, __ F.3d __, No. 99-3337, 2001 WL 1042454 (3d Cir. Aug. 27, 2001). That is the case here, and because, as will be discussed below, Petitioner has not demonstrated an excuse for the procedural default on Grounds Five and Six, the court will not consider those claims on habeas review.

This result may disappoint the Petitioner, but the court notes the potentially more disappointing ramifications of Respondent's requested alternative. Because a "mixed petition" filed in a federal district court does not toll the statute of limitations deadline under § 2244(d)(2), *see Jones v. Berge*, 101 F. Supp. 2d 1145 (E.D. Wis. 2000), Petitioner runs the risk that a renewed petition for habeas corpus would be time-barred as to all claims under § 2244(d).

In *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999), the Supreme Court held that in order to satisfy the procedural default requirement, a state prisoner must present all claims to a state supreme court in a petition for discretionary review. *Id. Boerckel* mandates that the Petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 1732. The only prior instance where Petitioner raised Grounds Five and Six was in his post-conviction petition. He did not appeal the denial of that petition to either the Illinois Appellate Court or the Illinois Supreme Court. Petitioner here has consequently failed to exhaust these two claims. Moreover, the parties do not dispute that the period in which to exhaust these claims has expired. Hence, both claims are procedurally defaulted.

Because Grounds Five and Six are procedurally defaulted, the court may reach the merits of these claims only if Petitioner is able to "'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Rittenhouse v. Battles*, No. 00-3461, 2001 WL 965939, at *8 (7th Cir. Aug. 27, 2001) (quoting *Anderson v. Cowan*, 227 F.3d 893, 899-900 (7th Cir. 2000)). A "fundamental miscarriage of justice" is established "by demonstrating it is more likely than not that no reasonable juror would have convicted petitioner in light of new evidence." *Zamora v. Pierson*, No. 00 C 1151, 2001 WL 315199, at *5 (N.D. Ill. Mar. 30, 2001).

Petitioner essentially argues that his failure to exhaust Grounds Five and Six (and consequent procedural default) should be excused under the "inordinate delay"

12

doctrine. It is true that "when there have been inordinate delays by the state court in processing a post-conviction petition . . . a federal district court may excuse a petitioner's failure to exhaust." *United States ex rel. Hayes v. Washington*, 94 C 942, 1995 WL 314545, at *2 (N.D. Ill. May 19, 1995) (citing *Jenkins v. Gramley*, 8 F.3d 505, 508 (7th Cir. 1993)). The "inordinate delay" doctrine does not apply in a case such as this, however, where the trial court *did* process Petitioner's post-conviction petition. Once he received notice of this petition, he could have appealed it, but, instead, chose to file the instant petition for habeas corpus.

Because Petitioner has alleged no other "cause" and has also failed to offer any "new evidence" that would demonstrate it is more likely than not that a reasonable juror could not convict Petitioner, the court dismisses Grounds Five and Six of the instant petition.[7]

## CONCLUSION

For the foregoing reasons, the court denies Respondent's motion to dismiss (Doc. 13-1) the entire petition as untimely, but grants the motion as to Grounds Five and Six

---

[7] In his "Traverse/Reply to Respondent's Motion [to Dismiss]," Petitioner requests that this court appoint him counsel. While Grounds One through Four of the instant habeas petition remain, the court frankly doubts the potential success of these claims. The court will nevertheless await Respondent's Answer; if such Answer exposes the potential success of Grounds One through Four, the court will appoint counsel to aid Petitioner in a Reply.

due to Petitioner's failure to exhaust, and consequent procedural default of, those claims. The court directs Respondent to answer Grounds One through Four of the habeas corpus petition within 20 days of this order.

ENTER:

Dated: September 28, 2001

REBECCA R. PALLMEYER
United States District Judge